UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

MARVIN MARTIN,

                    Plaintiff,                        Case No. 1:16-cv-493

v.                                                    Honorable Paul L. Maloney

DAN HEYNS et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is not presently incarcerated.  He was paroled on May 19, 2016, less than three weeks after he filed his complaint.  The incidents that form the basis for his complaint occurred while he was incarcerated with the MDOC at the Reception and Guidance Center in Jackson, Michigan and at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Michigan.  Plaintiff's claims center on his designation as a member of a Security Threat Group (STG) while he was housed in those facilities.  Plaintiff sues Defendants Dan Heyns, former director of the MDOC; Thomas Finco, former MDOC Central Facilities Administrator; Shawn Brewer, former Deputy Warden at LRF; Lawrence Brown, Departmental Specialist for the Emergency Management Team with the Operations Department of the Central Facilities Administration; and Brent Travelbee, the Emergency Management and Security Threat Group Manager for the Operations Department within the Correctional Facilities Administration.  Plaintiff sues each Defendant in his official and personal capacity.

The period of incarceration at issue in this suit is not Plaintiff's first.  Plaintiff indicates that he was discharged from incarceration in 2004.  At that time, Plaintiff carried a designation of STG II.[1]

On March 27, 2014, Plaintiff was again incarcerated with the MDOC.  He was housed the first month at the Reception and Guidance Center.  Classification Officer Edward Whitney informed Plaintiff that his STG II designation would continue, even though ten years had passed since his last

---

[1]Designation as a STG member is nothing more than a security classification used by the MDOC. *Harbin Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). MDOC Policy Directive 04.04.113 sets forth the process for determining STG membership and the consequences once the designation is made.  Although the policy directive at the time Plaintiff was discharged in 2004 differs from the policy directive in place when he was incarcerated again in 2010 (and the policy directive in place today, for that matter), the process for determining STG membership and the consequences of such membership afford similar levels of broad discretion for the MDOC and similarly adverse consequences for the designee.

incarceration. Plaintiff alleges that he engaged in no STG related activity during that period. Plaintiff contends that he should have been classified at a security level of 1 and a management level of 1. Instead, because of the prior STG II designation he was classified at a security level of 1 and a management level of 5.

Plaintiff signed a form renouncing his membership in the group that posed the security threat. Whitney forwarded the form to Sergeant Atwater, the STG Coordinator for the Reception and Guidance Center. Sergeant Atwater concluded that Plaintiff should no longer bear any STG designation. Plaintiff was classified accordingly. On April 28, 2014, Plaintiff transferred to West Shoreline Correctional Facility (MTF) in Muskegon Heights, Michigan, a level 1 prison.

Plaintiff remained at MTF for only a few hours. He was almost immediately transferred to LRF. He was placed in administrative segregation there. Plaintiff stayed in administrative segregation at LRF for twelve days while the STG Coordinator, Sergeant Plichta, and shift commander, Captain Evans, and Defendant Brewer determined Plaintiff's status. After they completed their investigation, because of the input of Defendant Brown, Plaintiff was again designated STG II and was told he would be transferred to a level 5 facility. Instead, on May 9, Plaintiff was released to general population at LRF.

Thereafter, Plaintiff repeatedly sought removal of the designation. Despite the support of MDOC personnel at LRF, Plaintiff was repeatedly denied that relief. Plaintiff was told Defendant Brown refused to change the designation. Defendant Brown supported his refusal by reference to two incidents: (1) Plaintiff made four telephone calls on another prisoner's personal identification number; and (2) another

- 3 -

prisoner (or that prisoner's mother, according to Plaintiff) sent Plaintiff a Securepak[2] food package that was rejected. Although Plaintiff contends it was never proven that these incidents were STG-related, Defendant Brown was apparently not convinced. Defendant Brown later relied upon another incident to deny removal. Prisoner Baker, who was designated STG I, sent money to Plaintiff's account. Although Plaintiff contends the transaction was completely innocent, Defendant Brown was again apparently not convinced. As of February 12, 2016, Plaintiff was still designated STG II.[3]

Plaintiff contends that the STG II designation and the consequences that follow that designation, represent a deprivation of liberty without due process of law in violation of the Due Process Clause of the Fourteenth Amendment. Plaintiff further contends that application of the STG policy directive to him violates the Ex Post Facto prohibition in Article 1, Section 10 of the United States Constitution. Plaintiff also argues that Defendant Brown is liable for intentional infliction of emotional distress. Plaintiff seeks compensatory and punitive damages against each Defendant.

## Discussion

### I.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not

---

[2]"The Friends and Family Package Program is a package program that allows family members and others to send authorized items to prisoners while safeguarding against the introduction of contraband." MDOC Policy Directive 04.02.135 (9/26/2015).

[3]At some time prior to the date he filed his complaint, Plaintiff was transferred to the Oaks Correctional Facility (ECF) in Manistee, Michigan.

contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.     Due Process Clause

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005)

- 6 -

The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Rimmer-Bey*, 62 F.3d at 790-91, the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label

as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement).

Plaintiff's STG II designation is nothing more than a security classification used by the prison. *Harbin Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). Although it is not impossible that a security classification, or specifically the STG designation, might result in an atypical and significant hardship,[4] that is certainly not the case here. Plaintiff stayed in segregation for only twelve days and spent no time in a maximum security facility. In *Harbin Bey*, 420 F.3d at 577, the Sixth Circuit concluded "that Harbin–Bey's designation as an STG member fits well within the *Jones* and *Sandin* decisions[; h]is Equal Protection Clause and Due Process Clause claims are therefore without merit." The same is true for Plaintiff's designation as an STG member. Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim.

### B.    Ex Post Facto

The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) "'aggravates a crime, or makes it greater than it was, when committed,'" (3) "'changes the punishment'" to inflict greater punishment than the law provided when the crime was committed, or (4) "'alters the legal rules of evidence'" so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798)). To violate the Ex Post Facto

---

[4]*See, i.e., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (holding that administrative segregation for thirteen years is sufficiently atypical and significant to give rise to a liberty interest); *Heard v. Caruso*, 351 F. App'x 1, 7 (6th Cir. 2009) (holding that it is a fact question as to whether indefinite confinement in maximum security facilities because of STG II designation is an atypical and significant hardship).

provision, a law must (1) "'apply to events occurring before its enactment,'" and (2) "'disadvantage the offender affected by it.'" *Dyer v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)).

In raising his ex post facto claim, Plaintiff ignores the foundational requirement that the provision at issue must be a law. In *Draughn v. Caruso*, No. 2:08-cv-32, 2008 WL 5784454 (W.D. Mich. May 27, 2008), when considering whether application of a policy directive to change a prisoner's security classification might violate the ex post facto clause, the Court stated:

> [A]n ex post facto law must be a criminal or penal measure. *Weaver v. Graham*, 450 U.S. 24, 28-29 (1981); *Dobbert v. Florida*, 432 U.S. 282, 292-93 (1977). In addition, the Ex Post Facto clauses apply by their own force only to laws passed by Congress or state legislatures. *Marks v. United States*, 430 U.S. 188, 191-92 (1977). In this case, Plaintiff is complaining about a policy directive, not a law passed by Congress or a state legislature. Therefore, this claim is properly dismissed as being without merit.

*Id.* at *2, Report and Recommendation adopted 2009 WL 884664 (W.D. Mich. March 27, 2009); *see also Shabazz v. Gabry*, 123 F.3d 909, 915 (6th Cir. 1997) (holding that policy directives do not have the force and character of law for ex post facto analysis). MDOC Policy Directive 04.04.113 is not a law. Accordingly, Plaintiff has failed to state a claim for violation of the ex post facto clause.

### C.     Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress is a state-law tort claim in Michigan. *Ross v. Burns*, 612 F.2d 271, 273 (6th Cir. 1980). This Court declines to exercise jurisdiction over Plaintiff's state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th

Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991));

*see also Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   July 20, 2016                         /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge

- 11 -